217-10/WJP

FREEHILL, HOGAN & MAHAR, LLP
Attorneys for Defendant
MAERSK, INC.
80 Pine Street
New York, New York 10005-1759
Telephone No: (212) 425-1900
E-mail: pallas@freehill.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------
NYMET INDUSTRIAL SOLUTIONS, INC.,

            Plaintiff,

      -against-

MAERSK, INC.,

            Defendant.
------------------------------------------------------

Docket No: 2:10-cv-02626

**DECLARATION OF
ARLENE LIZETH ALVARADO**

      ARLENE LIZETH ALVARADO, under penalty of perjury hereby testifies as follows:

      1.    I am employed by Maersk Central America, S.A. as the Regional Claims Assistant for Latin America. Maersk Central America, S.A. is an agent for A.P. Moller-Maersk A/S the ocean carrier for the subject shipment in this action. I have been employed by Maersk and have been in my current position since 2006.

      2.    Maersk is a global transportation provider and ocean carrier, which, among other services, provides regular containerized liner service between various ports around the world, including ports in the Dominican Republic and India.

364277.1

3.  As part of my regular duties, I review documents related to the carriage of goods by sea including bills of lading and freight charges relating to shipments carried by Maersk. I am fully familiar with the standard form of the Maersk bill of lading and the terms and conditions incorporated therein.

4.  Attached as Exhibit A is a true and accurate copy of the front side of Maersk's bill of lading No.856594628, which I understand is the basis for the claim in this lawsuit. Exhibit A is a copy from our regular business file.

5.  Attached as Exhibit B is a true and accurate copy of the reverse side of Maersk's bill of lading. The printed clauses on the reverse side are standard terms for bills of lading issued by Maersk.

6.  Attached as Exhibit C is a true and accurate copy of the terms of Maersk's bill of lading which are available electronically at http://www.maerskline.com/link/?page_brochure&path_/our_services/general_business_terms/bill_of_lading_clauses. These terms and conditions are the same as those appearing on the reverse side of the Maersk Bill of lading.

7.  The shipment at issue in the case consisted of ten containers:

| | | |
|---|---|---|
| MSKU9164891 | MSKU0087789 | PONU7247317 |
| TRIU9487649 | MSKU8009102 | PONU7196539 |
| MKSU0041664 | TTNU9174423 | MSKU9750130 |
| MSKU9867718 | | |

All of the containers were carried under a single bill of lading No. 856594628.

8.  The cargo was originally booked to Laem Chabang, Thailand with transshipment through Hong Kong and Singapore. The booking destination was changed twice at the request of the shipper, Nymet, first to Penang, Malaysia (with transshipment through Hong Kong and Singapore), and later to Kandla, India. A copy of the booking

364277.1

confirmation for Thailand and the booking acknowledgment for Malaysia are attached hereto as Exhibit D.

9. The 10 containers were loaded onto the M/V Maersk Nairobi in the Dominican Republic on August 7, 2008 and thereafter moved together to the shipment's final destination in India.

10. Maersk, as part of providing worldwide transportation by sea, utilizes an extensive network of transshipment ports and feeder vessels, whereby Maersk will regularly and routinely offload containers from one vessel and load them onto another vessel in order to route the shipment to its final destination. This is necessary because each load port does not have a specific vessel designated to travel to each and every possible destination in the world. Thus, Maersk employs a relay system with various transshipment hubs to route cargo from its origin to its destination. The use of such a relay/transshipment system is common practice in the marine liner service industry, and, to my knowledge, is utilized by every major container carrier in the world.

11. With regard to bill of lading No. 856594628, the containers were transshipped though intermediate "transshipment" ports, as follows:

Dominican Rep.:   loaded on August 7, 2008
Algeciras Spain:  unloaded on August 23, 2008/    loaded August 24, 2008
Jebel Ali, UAE:   unloaded September 17, 2008/   loaded September 26, 2008
Mundra, India:    unloaded October 2, 2008/      loaded October 19, 2008

12. After the containers were loaded in Mundra, India, they were carried to the ultimate destination and discharged at Kandla, India on October 20, 2008.

13. The shipment carried under bill of lading No. 856594628 was booked by BRS Logistics employee Lilliam Beltre. Maersk was provided with the contact e-mail

brslogistics@yahoo.com. BRS is a freight forwarder or non-vessel owning common carrier ("NVOCC") acting on behalf of Nymet.

14. Maersk tracks all of its shipments electronically, and the Maersk tracking system automatically generates updated reports sent to the e-mail address of the party that booked the shipment when the status of the shipment changes.

15. On July 31, 2008, the route for these containers, including the transshipment ports, was established and a report was automatically generated and sent to BRS Logistics at the e-mail address specified. This report showed that the cargo, loaded at the Dominican Republic was to be transshipped through Algeciras, Spain and Jebel Ali, UAE. A copy of the data from Maersk's computer achieves is attached as Exhibit E.

16. Transshipment is expressly provided for in the Maersk bill of lading under Paragraph 19. See Exhibit C at ¶19. Specifically, the Maersk bill provides that transshipment is permissible, even if not contemplated in advance of the shipment, and that Maersk may load and unload the goods at any port, whether or not such port is listed on the bill of lading. See Ex. C at ¶19.1(b) and ¶19.1(e).

17. Transshipment is a necessary component from port to port shipping, and Maersk has established an extensive network of transshipment ports which allow a container to be shipped to/from virtually any port in the world where Maersk operates. The use of transshipment ports is well known in the context of ocean shipping and is widely used throughout the industry.

18. Both Algeciras and Jebel Ali are major components in Maersk's network of transshipment ports, primarily because of their geographic location and the capabilities of the port facilities established at these two ports.

364277.1

19. Algeciras serves as a major transshipment hub for cargo crossing the Atlantic Ocean and being sent throughout Northern Europe, the Mediterranean, and the West African coast. By way of the Mediterranean, cargo is also shipped to the Middle East, East Africa, India and Asia.

20. Dubai is a major transshipment hub for Maersk because it connects the east and the west, cargo from either east or west can be routed through Jebel Ali and transported, though other transshipment ports, to any other location.

21. The cargo was also transshipped through Mundra, India, a receiving port in India, where it was forwarded to its final destination at Kandla, India aboard the M/V OEL VICTORY.

22. In the case of this shipment, Maersk does not provide direct service from the Dominican Republic to Kandla, India and thus transshipment was absolutely necessary in order to accommodate this shipment.

23. The Maersk bill of lading contains a forum selection clause which provides that in all cases in which the U.S. Carriage of Goods By Sea Act (COGSA) does not apply, all claims under the contract shall be governed by and construed in accordance with English law and shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the courts of another country. See Exhibit C. at ¶26.

24. The shipment carried under bill of lading No. 856594628 was neither to nor from a U.S. port, nor did the cargo ever enter a U.S. port during the carriage.

25. Once the cargo was discharged in Kandla, India on October 20, 2008 demurrage began to accrue. Nymet and/or the receiver of the cargo failed to take

364277.1

possession of the cargo. A dispute arose over the payment of demurrage which Maersk attempted to resolve with Nymet. The parties were unable to resolve the demurrage dispute and the cargo was seized by customs in Kandla and sold.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Panama, Republic of Panama

8 February 2011

*[signature]*

ARLENE LIZETH ALVARADO

364277.1