# EXHIBIT A

# MAERSK LINE

**BILL OF LADING**
**OR MULTIMODAL TRANSPORT**

MAEU

B/L No. 856594628

| | |
|---|---|
| Shipper<br>NYMET INDUSTRIAL SOLUTIONS<br>84 NESCONSET HWY<br>Port Jefferson Station New York USA 11776<br>+631 923-1400 +631-923-1404<br>igardner@nymetusa.com | Booking No.<br>856594628 |
| | Export references           Svc Contract<br>                        215348 |
| | Onward inland routing (Not part of Carriage as defined in clause 1. For account and risk of Merchant) |

| | |
|---|---|
| Consignee (negotiable only if consigned "to order", "to order of" a named Person or "to order of bearer")<br>GANPATI ENTERPRISES<br>ADDRESS: D-565 RANJIT AVENUE,<br>AMRITSAR, 143001-PUNJAB,<br>INDIA | Notify Party (see clause 22)<br>SHIVA TEX<br>behind mahajan palace<br>majitha road bypass, amritsar, 143001<br>india |

| Vessel (see clause 1 + 19)<br>MAERSK NAIROBI | Voyage No.<br>0814 | Place of Receipt. Applicable only when document used as Multimodal Transport B/L. (see clause 1) |
|---|---|---|
| Port of Loading<br>Caucedo | Port of Discharge<br>Kandla, India | Place of Delivery. Applicable only when document used as Multimodal Transport B/L. (see clause 1) |

## PARTICULARS FURNISHED BY SHIPPER

| Kind of Packages; Description of goods; Marks and Numbers; Container No./Seal No. | Weight | Measurement |
|---|---|---|
| 10 containers said to contain 10 Loosen<br><br>meltable steel scrap consisting of HMS I and II(80:20) H.S.CODE<br>7204.41.00/7204.49.20<br> confirming to ISRI Code 200-206<br>CFR Kandla,India<br>Port of Discharge:Kandla,India<br>Beneficiary certifies that merchandise to be of Dominican Republic origin.<br>Port of Loading: Caucedo/Rio Haina<br>Port of Discharge: Kandla,India<br>10x40FT Loose Packed Containers:<br>***In Transit to Icd Ludhiana - Onwards carriage from Kandla  to Ludhiana  is arranged<br>by Merchant for account and risk of Merchant****<br><br>No Marks.<br><br>MSKU8009102  ML-CB0144278  40 DRY 9'6  1 Loosen  22270.000 KGS  40.0000 CBM<br>MSKU0087789  ML-CB0149700  40 DRY 9'6  1 Loosen  23085.000 KGS  40.0000 CBM<br>PONU7247317  ML-CB0149636  40 DRY 9'6  1 Loosen  21725.000 KGS  40.0000 CBM<br>TRIU9487649  ML-CB0149582  40 DRY 9'6  1 Loosen  25605.000 KGS  40.0000 CBM<br>PONU7196539  ML-CB0149666  40 DRY 9'6  1 Loosen  23325.000 KGS  40.0000 CBM | 241025.000 KGS | 400.0000 CBM |
| Above particulars as declared by Shipper, but without responsibility of or representation by Carrier (see clause 14) | | |

| Freight & Charges | Rate | Unit | Currency | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| Carrier's Receipt (see clause 1 and 14). Total number<br>of containers or packages received by Carrier.<br>10 container(s) | Place of Issue of B/L<br>The Woodlands | RECEIVED by the Carrier from the Shipper, as far as ascertained by reasonable means of checking, in apparent good order and condition unless otherwise stated herein, the total number or quantity of Containers or other packages or units indicated in the box entitled "Carrier's Receipt" stated below this line of Lading or the Place of Receipt, if mentioned above to be that of carriage for the Place of Delivery, if mentioned above. One original Bill of Lading must be surrendered duly endorsed in exchange for the Goods, rights, delivery, provisions, conditions, exceptions, limitations, and liberties hereof.<br>IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THOSE TERMS AND CONDITIONS... |
|---|---|---|
| Number & Sequence of Original B(s)/L<br>1/THREE | Date of Issue of B/L (UTC Time)<br>2008-10-17 | |
| Declared Value (see clause 7.3) | Received for Shipment Date ( Local Time )<br>2008-07-01 | Signed for the Carrier A.P. Möller - Maersk A/S trading as Maersk Line |
| | | As Agent(s) for the Carrier<br>Maersk Inc. - Woodlands |

This transport document has one or more numbered attachments

# EXHIBIT B

# MULTIMODAL TRANSPORT BILL OF LADING

**1. Definitions**

**2. Carrier's Tariff**

**3. Warranty**

**4. Subcontracting**

**5. Carrier's Responsibility: Port-to-Port Shipment**

**6. Carrier's Responsibility – Multimodal Transport**

**7. Exclusions**

**8. General**

**9. Notice of Loss, Time Bar**

**10. Defences and Limits for Carrier**

**11. Shipper-packed Containers**

**12. Lien**

**13. Perishable Cargo**

**14. Inspection of Goods**

**15. Merchant's Responsibility**

**16. Description of Goods**

**17. Freight and Charges**

**18. Lien**

**19. Optional Stowage, Deck Cargo and Livestock**

**20. Methods and Routes of Carriage**

**21. Matters Affecting Performance**

**22. Dangerous Goods**

**23. Notification and Delivery**

**24. Both-to-Blame Collision Clause**

**25. General Average and Salvage**

**26. Variation of the Contract**

**27. Law and Jurisdiction**

# EXHIBIT C

Case 2:10-cv-02626-JS -AKT   Document 14-1   Filed 02/09/11  Page 6 of 23



**MAERSK**
LINE

簡体中文  Español  English                              Log in | Register | Help



Home   Services   Tools   News & Media   Help & Contact   Local offices   About us        [ Search ]

My Maersk Line
Schedules
Rates
Tracking


» Live Help
Let us help you in
an online chat

**Services**

» Vessels

» Containers

» Refrigerated services

» Special cargo

» eBusiness Integration
  Solutions

» Dangerous cargo

» Value Added Services

» Transportation security

» General business terms

# Terms and conditions of carriage

**Multimodal transport bill of lading**

1. Definitions
2. Carrier's Tariff
3. Warranty
4. Subcontracting
5. Carrier's Responsibility: Port-to-Port Shipment
6. Carrier's Responsibility - Multimodal Transport
7. Compensation and Liability Provisions
8. General
9. Notice of Loss, Time Bar
10. Defences and Limits for the Carrier
11. Shipper-packed Containers
12. Perishable Cargo
13. Inspection of Goods
14. Description of Goods
15. Merchant's Responsibility
16. Freight, Expenses and Fees
17. Lien
18. Optional Stowage, Deck Cargo and Livestock
19. Methods and Routes of Carriage
20. Matters Affecting Performance
21. Dangerous Goods
22. Notification and Delivery
23. Both-to-Blame Collision Clause
24. General Average and Salvage
25. Variation of the Contract
26. Law and Jurisdiction

**1. Definitions**

**"Carriage"** means the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Goods.

**"Carrier"** means A.P. Møller – Mærsk A/S trading as Maersk Line of 50 Esplanaden, DK-1098, Copenhagen K, Denmark.

**"Container"** includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

**"Freight"** includes all charges payable to the Carrier in accordance with the applicable Tariff and this bill of lading.

"Goods" means the whole or any part of the cargo and any packaging accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

**"Hague Rules"** means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February 1968, but only if such amendments are compulsorily applicable to this bill of lading. (It is expressly provided that nothing in this bill of lading shall be construed as contractually applying the said Rules as amended by said Protocol).

**"Holder"** means any Person for the time being in possession of this bill of lading to or in whom rights of suit and/or liability under this bill of lading have been transferred or vested.

**"Maersk Line"** is the trade name of the Carrier.

**"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person

Case 2:10-cv-02626-JS -AKT   Document 14-1   Filed 02/09/11   Page 7 of 23

owning or entitled to the possession of the Goods or of this bill of lading and anyone acting on behalf of such Person, or any principal of such Person.

**"Multimodal Transport"** arises if the Place of Receipt and/or the Place of Delivery are indicated on the reverse hereof in the relevant spaces.

**"Ocean Transport"** means the same as Port-to Port Shipment.

**"Package"** where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reverse hereof entitled "Carrier's "Receipt" are each deemed a Package.

**"Person"** includes an individual, corporation, or other legal entity.

**"Port-to-Port Shipment"** arises when the Carriage is not Multimodal.

**"Subcontractor"** includes owners, charterers and operators of vessels (other than the Carrier), stevedores, terminal and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the Carriage and any direct or indirect Subcontractors, servants and agents thereof whether in direct contractual privity or not.

**"Terms and Conditions"** means all terms, rights, defences, provisions, conditions, exceptions, limitations and liberties hereof.

**"US COGSA"** means the US Carriage of Goods by Sea Act 1936.

**"Vessel"** means any water borne craft used in the Carriage under this Bill of Lading which may be a feeder vessel or an ocean vessel.

**2.Carrier's Tariff**

The terms and conditions of the Carrier's applicable Tariff are incorporated herein. Attention is drawn to the terms therein relating to free storage time and to container and vehicle demurrage or detention. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this bill of lading and the applicable Tariff, this bill of lading shall prevail.

**3. Warranty**

The Merchant warrants that in agreeing to the Terms and Conditions hereof he is, or has the authority to contract on behalf of, the Person owning or entitled to possession of the Goods and this bill of lading.

**4. Subcontracting**

**4.1** The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the Carriage.

**4.2** The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the Carriage of the Goods whether or not arising out of negligence on the part of such Person, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such servant, agent, and Subcontractor shall have the benefit of all Terms and Conditions of whatsoever nature herein contained or otherwise benefiting the Carrier including clause 26 hereof, the law and jurisdiction clause, as if such Terms and Conditions (including clause 26 hereof) were expressly for their benefit and, in entering into this contract, the Carrier, to the extent of such Terms and Conditions, does so on its own behalf, and also as agent and trustee for such servants, agents and Subcontractors.

**4.3** The provisions of the second sentence of clause 4.2 including but not limited to the undertaking of the Merchant contained therein, shall extend to all claims or allegations of whatsoever nature against other Persons chartering space on the carrying vessel.

**4.4** The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with the Terms and Conditions of this bill of lading which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

## 5. Carrier's Responsibility: Port-to-Port Shipment

**5.1** Where the Carriage is Port-to-Port, then the liability (if any) of the Carrier for loss of or damage to the Goods occurring between the time of loading at the Port of Loading and the time of discharge at the Port of Discharge shall be determined in accordance with any national law making the Hague Rules compulsorily applicable to this bill of lading (which will be US COGSA for shipments to or from the United States of America) or in any other case in accordance with the Hague Rules Articles 1-8 inclusive only.

**5.2** The Carrier shall have no liability whatsoever for any loss or damage to the Goods while in its actual or constructive possession before loading or after discharge, howsoever caused. Notwithstanding the above, in case and to the extent that any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defence, limitation and liberty in the Hague Rules as applied by clause 5.1 during such additional compulsory period of responsibility, notwithstanding that the loss or damage did not occur at sea.

**5.3** Where US COGSA applies then the provisions stated in the said Act shall govern before loading on the vessel or after discharge therefrom, as the case may be, during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading and/or Discharge. If the Carrier is requested by the Merchant to procure Carriage by an inland carrier in the United States of America and the inland carrier in his discretion agrees to do so, such carriage shall be procured by the Carrier as agent only to the Merchant and such carriage shall be subject to the inland carrier's contract and tariff. If for any reason the Carrier is denied the right to act as agent at these times, his liability for loss damage or delay to the Goods shall be determined in accordance with clause 6 hereof.

**5.4** In the event that the Merchant requests the Carrier to deliver the Goods:

**(a)** at a port other than the Port of Discharge: or
**(b)** (save in the United States of America) at a place of delivery instead of the Port of Discharge, and the Carrier in its absolute discretion agrees to such request, such further Carriage will be undertaken on the basis that the Terms and Conditions of this bill of lading are to apply to such Carriage as if the ultimate destination agreed with the Merchant had been entered on the reverse side of this bill of lading as the Port of Discharge or Place of Delivery.

## 6. Carrier's Responsibility - Multimodal Transport

Where the Carriage is Multimodal Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable, and, save as is otherwise provided for in this bill of lading, the Carrier shall be liable for loss or damage occurring during the Carriage only to the extent set out below:

**6.1** Where the stage of Carriage where loss or damage occurred is not known.

**(a)** Exclusions
The Carrier shall be relieved of liability for any loss or damage where such loss or damage was caused by:
(i) an act or omission of the Merchant or Person acting on behalf of the Merchant other than the Carrier, his servant, agent or Subcontractor,
(ii) compliance with instructions of any Person entitled to give them.
(iii) insufficient or defective condition of packing or marks,
(iv) handling, loading, stowage or unloading of the Goods by the Merchant or any Person acting on his behalf,
(v) inherent vice of the Goods,
(vi) strike, lock out, stoppage or restraint of labour, from whatever cause, whether partial or general,
(vii) a nuclear incident,
(viii) any cause or event which the Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.
**(b)** Burden of Proof
The burden of proof that the loss or damage was due to one or more of the causes or events specified in this clause 6.1 shall rest upon the Carrier. Save that if the Carrier establishes that,

Case 2:10-cv-02626-JS -AKT   Document 14-1   Filed 02/09/11   Page 9 of 23

in the circumstances of the case, the loss or damage could be attributed to one or more of the causes or events specified in clause 6.1(a)(iii), (iv) or (v), it shall be presumed that it was so caused. The Merchant shall, however, be entitled to prove that the loss or damage was not, in fact, caused either wholly or partly by one or more of these causes or events.

**(c)** Limitation of Liability

Except as provided in clauses 7.2(a), (b) or 7.3, if clause 6.1 operates, total compensation shall under no circumstances whatsoever and howsoever arising exceed USD 500 per package where Carriage includes Carriage to, from or through a port in the United States of America and in all other cases 2 SDR per kilo of the gross weight of the Goods lost or damaged.

**6.2** Where the stage of Carriage where the loss or damage occurred is known. Notwithstanding anything provided for in clause 6.1 and subject to clause 18, the liability of the Carrier in respect of such loss or damage shall be determined:

**(a)** by the provisions contained in any international convention or national law which provisions:

(i) cannot be departed from by private contract to the detriment of the Merchant, and

(ii) would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the Carriage during which the loss or damage occurred and received as evidence thereof any particular document which must be issued if such international convention or national law shall apply; or

**(b)** in case of shipments to or from the United States of America by the provisions of US COGSA if the loss or damage is known to have occurred during Carriage by sea to or from the USA or during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading or of Discharge in ports of the USA; or

**(c)** by the Hague Rules Articles 1-8 only inclusive where the provisions of clauses 6.2(a) or

(b) do not apply if the loss or damage is known to have occurred during Carriage by sea; or

**(d)** if the loss or damage is known to have occurred during Carriage inland in the USA, in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or, in the absence of such contract or tariff by the provisions of Clause 6.1, and in either case the law of the State of New York will apply; or

**(e)** where the provisions of clause 6.2(a), (b), (c) and/or (d) above do not apply, in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or in the absence of such contract or tariff by the provisions of clause 6.1.For the purposes of clause 6.2 references in the Hague Rules to carriage by sea shall be deemed to include references to all waterborne Carriage and the Hague Rules shall be construed accordingly.

**6.3** If the Place of Receipt or Place of Delivery is not named on the reverse hereof the Carrier shall be under no liability whatsoever for loss or damage to the Goods howsoever occurring:

**(a)** if the Place of Receipt is not named on the reverse hereof and such loss or damage arises prior to loading on to the vessel; or

**(b)** if the Place of Delivery is not named on the reverse hereof, if such loss or damage arises subsequent to discharge from the vessel, save that where US COGSA applies then the provisions stated in said Act shall govern before loading on to and after discharge from any vessel and during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading and/or Discharge.

**6.4** Amendment of Place of Delivery

In the event that the Merchant requests, and the Carrier agrees to amend the Place of Delivery, such amended Carriage will be undertaken on the basis that the Terms and Conditions of this bill of lading are to apply until the goods are delivered to the Merchant at such amended Place of Delivery.

## 7. Compensation and Liability Provisions

**7.1** Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus Freight and insurance if paid. If there is no invoice value of the Goods or if any such invoice is not bona fide, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered or should have been delivered to the Merchant. The value of the Goods shall be fixed according to the current market price, by reference to the normal value

Case 2:10-cv-02626-JS -AKT Document 14-1 Filed 02/09/11 Page 10 of 23

of goods of the same kind and/or quality.

**7.2** Save as is provided in clause 7.3:
**(a)** Where the Hague Rules apply hereunder by national law by virtue of clause 5.1 or clause 6.2(a) the Carrier's liability shall in no event exceed the amounts provided in the applicable national law. If the Hague Rules Article 1-8 only apply pursuant to clauses 5.1 or 6(c) the Carrier's maximum liability shall in no event exceed GBP 100 per Package or unit.
**(b)** Where Carriage includes Carriage to, from or through a port in the United States of America and US COGSA applies by virtue of clauses 5.1 or 6.2(b) neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500 per Package or customary freight unit.
**(c)** In all other cases compensation shall not exceed the limitation of liability of 2 SDR per kilo as provided in clause 6.1(c).

**7.3** The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this bill of lading may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked "Declared Value" on the reverse of this bill of lading and extra freight paid. In that case, the amount of the declared value shall be substituted for the limits laid down in this bill of lading. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

**7.4** Nothing in this bill of lading shall operate to limit or deprive the Carrier of any statutory protection, defence, exception or limitation of liability authorised by any applicable laws, statutes or regulations of any country. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of any carrying ship or vessel.

**8. General**
**8.1** The Carrier does not undertake that the Goods or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular requirement of any licence, permission, sale contract, or credit of the Merchant or any market or use of the Goods and the Carrier shall under no circumstances whatsoever and howsoever arising be liable for any direct, indirect or consequential loss or damage caused by delay. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed the Freight paid for the Carriage.

**8.2** Save as is otherwise provided herein, the Carrier shall under no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause whatsoever or for loss of profits.

**8.3** Once the Goods have been received by the Carrier for Carriage the Merchant shall not be entitled neither to impede, delay, suspend or stop or otherwise interfere with the Carrier's intended manner of performance of the Carriage or the exercise of the liberties conferred by this bill of lading nor to instruct or require delivery of the Goods at other than the Port of Discharge or Place of Delivery named on the reverse hereof or such other Port or Place selected by the Carrier in the exercise of the liberties herein, for any reason whatsoever including but not limited to the exercise of any right of stoppage in transit conferred by the Merchant's contract of sale or otherwise. The Merchant shall indemnify the Carrier against all claims, liabilities, loss, damages, costs, delay, attorney fees and/or expenses caused to the Carrier, his Subcontractors, servants or agents or to any other cargo or to the owner of such cargo during the Carriage arising or resulting from any stoppage (whether temporary or permanent) in the Carriage of the Goods whether at the request of the Merchant, or in consequence of any breach by the Merchant of this clause, or in consequence of any dispute whatsoever in respect of the Goods (including, but without restriction, disputes as to ownership, title, quality, quantity or description of and/or payment for the Goods) involving any one or more party defined herein as the Merchant as between themselves or with any third party other than the Carrier and the liberties provided for in clauses 19 and 20 shall be available to the Carrier in the event of any such stoppage.

**8.4** The Terms and Conditions of this bill of lading shall govern the responsibility of the Carrier

in connection with or arising out of the supplying of a Container to the Merchant whether before, during or after the Carriage.

**9. Notice of Loss, Time Bar**
Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the Place of Delivery (or Port of Discharge if no Place of Delivery is named on the reverse hereof) before or at the time of removal of the Goods into the custody of the Merchant or if the loss or damage is not apparent within three days thereafter, such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this bill of lading. In any event, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after their delivery or the date when they should have been delivered.

**10.** Defences and Limits for the Carrier The Terms and Conditions of whatever nature provided for in this bill of lading shall apply in any action against the Carrier for any loss or damage whatsoever and howsoever occurring (and, without restricting the generality of the foregoing, including delay, late delivery and/or delivery without surrender of this bill of lading) and whether the action be founded in contract, bailment or in tort and even if the loss or damage arose as a result of unseaworthiness, negligence or fundamental breach of contract

**11. Shipper-packed Containers**
If a Container has not been packed by the Carrier:

**11.1** This bill of lading shall be a receipt only for such a Container;

**11.2** The Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense whatsoever incurred by the Carrier if such loss of or damage to the contents and/or such injury, loss, damage, liability or expense has been caused by all matters beyond his control including, inter alia, without prejudice to the generality of this exclusion.
**(a)** the manner in which the Container has been packed; or
**(b)** the unsuitability of the Goods for carriage in Containers; or
**(c)** the incorrect setting of any thermostatic, ventilation, or other special controls thereof; or
**(d)** the unsuitability or defective condition of the Container provided that, if the Container has been supplied by the Carrier, this unsuitability or defective condition could have been apparent upon reasonable inspection by the Merchant at or prior to the time the Container was packed.

**11.3** The Merchant is responsible for the packing and sealing of all shipper-packed Containers and, if a shipper-packed Container is delivered by the Carrier with any original seal intact, the Carrier shall not be liable for any shortage of Goods ascertained at delivery.

**11.4** The Shipper shall inspect Containers before packing them and the use of Containers shall be prima facie evidence of their being sound and suitable for use.

**12. Perishable Cargo**
**12.1** Goods, including Goods of a perishable nature, shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this bill of lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specifically equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for Carriage any Goods which require refrigeration, ventilation or any other specialised attention without giving written notice of their nature and the required temperature or other setting of the thermostatic, ventilation or other special controls to the carrier. If the above requirements are not complied with the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

**12.2** The Merchant should note that refrigerated Containers are not designed
**(a)** to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo being presented at a higher temperature than that required for the Carriage; nor
**(b)** to monitor and control humidity levels, albeit a setting facility exists, in that humidity is influenced by many external factors and the Carrier does not guarantee the maintenance of

Case 2:10-cv-02626-JS -AKT Document 14-1 Filed 02/09/11 Page 12 of 23

any intended level of humidity inside any Container.

**12.3** The term "apparent good order and condition" when used in this bill of lading with reference to goods which require refrigeration, ventilation or other specialised attention does not mean that the Goods, when received were verified by the Carrier as being at the carrying temperature, humidity level or other condition designated by the Merchant.

**12.4** The Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of the refrigerating, ventilating or any other specialised machinery, plant, insulation and/or apparatus of the Container, vessel, conveyance and any other facilities, provided that the Carrier shall before and at the beginning of the Carriage exercise due diligence to maintain the Container supplied by the Carrier in an efficient state.

## 13. Inspection of Goods

The Carrier shall be entitled, but under no obligation, to open and/or scan any Package or Container at any time and to inspect the contents. If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measures and/or incur any reasonable additional expense to carry or to continue the Carriage thereof, and/or to sell or dispose of the Goods and/or to abandon the Carriage and/or to store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in his absolute discretion considers most appropriate, which sale, disposal, abandonment or storage shall be deemed to constitute due delivery under this bill of lading. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

## 14. Description of Goods

**14.1** This bill of lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carriers Receipt" on the reverse side hereof.

**14.2** No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

**14.3** The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs, other illegal substances or stowaways, and that the Goods will not cause loss damage or expense to the Carrier, or to any other cargo during the Carriage.

**14.4** If any particulars of any Letter of Credit and/or Import License and/or Sales Contract and/or Invoice or Order number and/or details of any contract to which the Carrier is not a party, are shown on the face of this bill of lading, such particulars are included at the sole risk of the Merchant and for his convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases Carrier's liability under this bill of lading.

## 15. Merchant's Responsibility

**15.1** All of the Persons coming within the definition of Merchant in clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this bill of lading.

**15.2** The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, delay, fines, attorney fees and/or expenses arising from any breach of any of the warranties in clause 14.3 or from any other cause whatsoever in connection with the Goods for which the

Case 2:10-cv-02626-JS -AKT Document 14-1 Filed 02/09/11 Page 13 of 23

Carrier is not responsible.

**15.3** The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional Carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof.

**15.4** If Containers supplied by or on behalf of the Carrier are unpacked by or for the Merchant, the Merchant is responsible for returning the empty Containers, with interiors clean, odour free and in the same condition as received, to the point or place designated by the Carrier, within the time prescribed. Should a Container not be returned in the condition required and/or within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expense incurred as a result thereof.

**15.5** Containers released into the care of the Merchant for packing, unpacking or any other purpose whatsoever are at the sole risk of the Merchant until redelivered to the Carrier. The Merchant shall indemnify the Carrier for all loss of and/or damage and/or delay to such Containers. Merchants are deemed to be aware of the dimensions and capacity of any Containers released to them.

**16. Freight, Expenses and Fees**
**16.1** Full Freight shall be payable based on particulars furnished by or on behalf of the Shipper. The Carrier may at any time open the Goods or Container(s) and, if the Shipper's particulars are incorrect the Merchant and the Goods shall be liable for the correct Freight and any expenses incurred in examining, weighing, measuring, or valuing the Goods.

**16.2** Full Freight shall be considered completely earned on receipt of the Goods by the Carrier and shall be paid and non returnable in any event.

**16.3** All sums payable to the Carrier are due on demand and shall be paid in full in United States currency or, at the Carrier's option, in its equivalent in the currency of the Port of Loading or of Discharge or the Place of Receipt or of Delivery or as specified in the Carrier's Tariff.

**16.4** The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation, additional insurance premium and other contingencies relative to Freight in the applicable Tariff. In the event of any discrepancy between Freight (incl. charges etc) items in the bill of lading and any Carrier invoices, the latter shall prevail.

**16.5** All Freight shall be paid without any set-off, counter-claim, deduction or stay of execution at latest before delivery of the Goods.

**16.6** If the Merchant fails to pay the Freight when due he shall be liable also for payment of service fee, interest due on any outstanding and/or overdue sum, reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier. Payment of Freight and charges to a freight forwarder, broker or anyone other than the Carrier or its authorised agent, shall not be deemed payment to the Carrier and shall be made at the Merchant's sole risk.

**16.7** Despite the acceptance by the Carrier of instructions to collect Freight, duties, fees, demurrage/detention and costs and expenses from the shipper or consignee or any other Person, then, in the absence of evidence of payment (for whatever reason) by such shipper or consignee or other Person when due, the Merchant shall remain responsible for and for the payment of such Freight, duties, fees, demurrage/detention and costs and expenses on receipt of evidence of demand within the meaning of clause 16.3

**16.8** If the Carrier, at its sole discretion, grants credit on any sums payable to the Carrier, the terms and conditions applicable to any credit (Credit Terms) are available from the Carrier or

his authorised agents or at http://www.maerskline.com-creditterms>. The applicable Credit Terms will automatically apply to any granting of credit by the Carrier, unless otherwise agreed by the Carrier.

## 17. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and for general average contributions to whomsoever due. The Carrier shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due from him to the Carrier under any other contract. The Carrier may exercise his lien at any time and any place in his sole discretion, whether the contractual Carriage is completed or not. In any event any lien shall extend to cover the cost of recovering any sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant. The Carrier's lien shall survive delivery of the Goods.

## 18. Optional Stowage, Deck Cargo and Livestock

**18.1** The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers.

**18.2** Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant unless on the reverse side hereof it is specifically stipulated that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the bill of lading any statement of such on-deck carriage. Save as provided in clause 18.3, such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of goods for the purpose of the Hague Rules or US COGSA and shall be carried subject to such Rules or Act, whichever is applicable.

**18.3** Goods (not being Goods stowed in Containers other than flats or pallets) which are stated herein to be carried on deck and livestock, whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the Carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and neither the Hague Rules nor US COGSA shall apply.

## 19. Methods and Routes of Carriage

**19.1** The Carrier may at any time and without notice to the Merchant:
**(a)** use any means of transport or storage whatsoever;
**(b)** transfer the Goods from one conveyance to another including transshipping or carrying the same on a vessel other than the vessel named on the reverse hereof or by any other means of transport whatsoever and even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein;
**(c)** unpack and remove the Goods which have been packed into a Container and forward them via Container or otherwise;
**(d)** sail without pilots, proceed via any route, (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;
**(e)** load and unload the Goods at any place or port (whether or not any such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Goods at any such port or place;
**(f)** comply with any orders or recommendations given by any government or authority or any Person or body or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions.

## 19.2 The liberties set out in clause

**19.1** may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of the Goods, including but not limited to loading or unloading other goods, bunkering or embarking or disembarking any person(s), undergoing repairs and/or drydocking, towing or being towed, assisting other vessels, making trial trips and adjusting instruments. Anything done or not done in accordance with clause 19.1 or any delay arising

therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

### 20. Matters Affecting Performance

If at any time Carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage) the Carrier may at his sole discretion and without notice to the Merchant and whether or not the Carriage is commenced either:

**(a)** Carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this bill of lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this clause 20(a) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight as the Carrier may determine; or
**(b)** Suspend the Carriage of the Goods and store them ashore or afloat upon the Terms and Conditions of this bill of lading and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension. If the Carrier elects to invoke the terms of this clause 20(b) then, notwithstanding the provisions of clause 19 hereof, he shall be entitled to charge such additional Freight and Costs as the Carrier may determine; or
**(c)** Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the Carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods. If the Carrier elects to use an alternative route under clause20(a) or to suspend the Carriage under clause 20(b) this shall not prejudice his right subsequently to abandon the Carriage.

### 21. Dangerous Goods

**21.1** No Goods which are or which may become of a dangerous, noxious, hazardous, flammable, or damaging nature (including radioactive material), or which are or may become liable to damage any Persons or property whatsoever, and whether or not so listed in any official or unofficial, international or national code, convention, listing or table shall be tendered to the Carrier for Carriage without previously giving written notice of their nature, character, name, label and classification (if applicable) to the Carrier and obtaining his consent in writing and without distinctly marking the Goods and the Container or other covering on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without obtaining his consent and/or such marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, noxious, hazardous, flammable or damaging nature they may at any time or place be unloaded, destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight and, the Carrier shall be under no liability to make any general average contribution in respect of such Goods.

**21.2** The Merchant warrants that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws, regulations or requirements which may be applicable during the Carriage.

**21.3** The Merchant shall indemnify the Carrier against all claims, liabilities, loss, damage, delay, costs, fines and/or expenses arising in consequence of the Carriage of such Goods, and/or arising from breach of any of the warranties in clause 21.2 including any steps taken by the Carrier pursuant to clause 21.1 whether or not the Merchant was aware of the nature of such Goods.

**21.4** Nothing contained in this clause shall deprive the Carrier of any of his rights provided for elsewhere.

### 22. Notification and Delivery

**22.1** Any mentioning in this bill of lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not involve the

Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**22.2** The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods or that part thereof shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

**22.3** If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at his discretion and without prejudice to any other rights which he may have against the Merchant without notice and without any responsibility attaching to him sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this bill of lading.

**22.4** Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the Carriage thereof.

**22.5** The Carrier may in his absolute discretion receive the Goods as Full Container Load and deliver them as less than Full Container Load and/or as break bulk cargo and/or deliver the Goods to more than one receiver. In such event the Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods, which are found upon the unpacking of the Container.

### 23. Both-to-Blame Collision Clause
**23.1** The Both-to-Blame Collision and New Jason clauses published and/or approved by BIMCO and obtainable from the Carrier or his agent upon request are hereby incorporated herein.

### 24. General Average and Salvage
**24.1** General average to be adjusted at any port or place at the Carrier's option and to be settled according to the York-Antwerp Rules 1994, this covering all Goods carried on or under deck. General average on a vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that vessel.

**24.2** Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall, if required, be submitted to the Carrier prior to delivery of the Goods. The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.

**24.3** Should the Carrier in its own discretion choose to post general average and/or salvage security due from cargo interests or pay general average and/or salvage contributions due from cargo interests, the Merchant hereby assigns to the Carrier all his rights in respect of the general average and/or salvage.

**24.4** If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

**25.** Variation of the Contract No servant or agent of the Carrier shall have the power to waive or vary any Terms and Conditions of this bill of lading unless such waiver or variation is in writing and is specifically authorised or ratified in writing by the Carrier.

### 26. Law and Jurisdiction
Whenever clause 6.2(d) and/or whenever US COGSA applies, whether by virtue of Carriage of the Goods to or from the United States of America or otherwise, that stage of the Carriage is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof. In all other cases, this bill of lading shall be governed by and construed in accordance with

Case 2:10-cv-02626-JS  -AKT   Document 14-1    Filed 02/09/11   Page 17 of 23

English law and all disputes arising hereunder shall be determined by the English High Court of Justice in London to the exclusion of the jjurisdiction of the courts of another country.

Print version

Terms of use | Privacy policy | Sitemap | © A.P. Møller - Mærsk A/S. All rights reserved          **A.P. Moller - Maersk Group**

# EXHIBIT D

 **MAERSK LINE**

# BOOKING CONFIRMATION

| **Booking No.:** | **856594628** | | **Print Date:** 2008-05-23 15:08 UTC |
|---|---|---|---|
| **Booked by Party:** | BRS LOGISTICS | **Service Mode:** | CY/CY |
| **Contact Name:** | LILLIAM BELTRE | **From:** | Caucedo,Dominican Republic |
| **Booked by Ref. No:** | Nymet USA | **To:** | Laem Chabang,Thailand |
| **Service Contract:** | 215348 | **Customer Cargo:** | |
| **Contractual Customer:** | BRS LOGISTICS | **Business Unit:** | Maersk Dominicana (Santo Domi) |
| **Ref. No:** | | | |

We thank you for your booking and enclose your booking details as follows :-

## Equipment

| Quantity | Size/Type/Height | (ft.in) | Collapsible | Sub. Equip | Gross Weight | Pack. Qty/Kind | Cargo Volume |
|---|---|---|---|---|---|---|---|
| 10 | 40 DRY | 9 6 | | | 260000.000 KGS | | |

## Intended Transport Plan

| From | To | Vessel | Voy No. | ETD | ETA |
|---|---|---|---|---|---|
| Caucedo Terminal | Manzanillo Terminal | MARIANNE SCHULTE | 0811 | 2008-06-17 | 2008-06-19 |
| Manzanillo Terminal | Balboa Port Terminal | | | 2008-06-20 | 2008-06-20 |
| Balboa Port Terminal | Hong Kong / Modern Terminals Ltd | MAERSK SEBAROK | 0810 | 2008-06-28 | 2008-07-18 |
| Hong Kong / Modern Terminals Ltd | Singapore/PSA Terminal | MAERSK MIAMI | 0816 | 2008-07-21 | 2008-07-24 |
| Singapore/PSA Terminal | Laem Chabang Port A0 | HELDERBERG | 0861 | 2008-07-27 | 2008-07-29 |

## Load Itinerary

| Type | Location | Release Date | From | To | Return Date | Time | Load Ref. |
|---|---|---|---|---|---|---|---|
| Empty Container Depot | Caucedo Terminal Caucedo Terminal Caucedo | 2008-05-27 | 08:00 | 05:00 | | | |
| Return Equip Delivery Terminal | Caucedo Terminal Caucedo Terminal Caucedo | | | | 2008-06-14 | 12:00 | |

**Haulage Instructions:**

BRS LOGISTICS

This document is subject to following:
- This booking and carriage are subject to the terms, conditions and provisions of the governing Maersk Line Combined Transport Bill of Lading. These terms, conditions and provisions are available upon request from the carrier or his representatives and are furthermore accessible on the Maersk Line website HYPERLINK "http://www.maerskline.com" under "My Maersk Line".
- The shipment is subject to tariff rates unless a correct and applicable service contract number is available
- The carrier's right to substitute the named and/or performing vessel(s) with another vessel or vessels at any time.
- Arrival, berthing, departure and transit times are estimated and given without guarantee and subject to change without prior notice
- All dates/times are given as reasonable estimates only and subject to change without prior notice.
Shipments destined for or carried/transhipped via the USA:
- This document is given subject to the customer providing the correct cargo description in accordance with U.S. law, including U.S. Customs requirements as described in Customs Rules and Regulations, 19 CFR Parts 4, 113 and 178 of October 31, 2002

 **MAERSK LINE**

# BOOKING ACKNOWLEDGEMENT

**Booking No.:** 856594628

**Print Date:** 2008-07-23 23:29 UTC

| | | | |
|---|---|---|---|
| **Booked by Party:** | BRS LOGISTICS | **Service Mode:** | CY/CY |
| **Contact Name:** | LILLIAM BELTRE | **From:** | Caucedo,Dominican Republic |
| **Booked by Ref. No:** | Nymct USA | **To:** | Penang,Malaysia |
| **Service Contract:** | 215348 | **Customer Cargo:** | |
| **Contractual Customer:** | BRS LOGISTICS | **Business Unit:** | Maersk Dominicana (Santo Domi) |
| **Ref. No:** | 31100014715, SCRAP METAL 31100014715 | | |

We thank you for your booking and enclose your booking details as follows :-

## Equipment

| Quantity | Size/Type/Height | (ft.in) | Collapsible | Sub. Equip | Gross Weight | Pack. Qty/Kind | Cargo Volume |
|---|---|---|---|---|---|---|---|
| 10 | 40 DRY | 9 6 | | | 260000.000 KGS | 10 Loosen | 400.0000 |

## Intended Transport Plan

| From | To | Vessel | Voy No. | ETD | ETA |
|---|---|---|---|---|---|
| Caucedo Terminal | Manzanillo Terminal | MAERSK NOUMEA | 0815 | 2008-08-12 | 2008-08-14 |
| Manzanillo Terminal | Balboa Port Terminal | | | 2008-08-15 | 2008-08-15 |
| Balboa Port Terminal | Hong Kong / Modern Terminals Ltd | MAERSK SENTOSA | 0814 | 2008-08-23 | 2008-09-12 |
| Hong Kong / Modern Terminals Ltd | Singapore/PSA Terminal | MAERSK MIAMI | 0824 | 2008-09-15 | 2008-09-18 |
| Singapore/PSA Terminal | Penang Port Sdn Bhd, NBCT | CAPE FRANKLIN | 0838 | 2008-09-24 | 2008-09-27 |

## Load Itinerary

| Type | Location | Release Date | From | To | Return Date | Time | Load Ref. |
|---|---|---|---|---|---|---|---|
| Empty Container Depot | Caucedo Terminal Caucedo Terminal Caucedo | 2008-05-27 | 08:00 | 05:00 | | | |
| Return Equip Delivery Terminal | Caucedo Terminal Caucedo Terminal Caucedo | | | | 2008-06-14 | 12:00 | |

**Haulage Instructions:**

BRS LOGISTICS

This document is subject to following:
- This booking and carriage are subject to the terms, conditions and provisions of the governing Maersk Line Combined Transport Bill of Lading. These terms, conditions and provisions are available upon request from the carrier or his representatives and are furthermore accessible on the Maersk Line website HYPERLINK "http://www.maerskline.com" under "My Maersk Line".
- The shipment is subject to tariff rates unless a correct and applicable service contract number is available
- The carrier's right to substitute the named and/or performing vessel(s) with another vessel or vessels at any time.
- Arrival, berthing, departure and transit times are estimated and given without guarantee and subject to change without prior notice.
- All dates/times are given as reasonable estimates only and subject to change without prior notice.
Shipments destined for or carried/transhipped via the USA:
- This document is given subject to the customer providing the correct cargo description in accordance with U.S. law, including U.S. Customs requirements as described in Customs Rules and Regulations, 19 CFR Parts 4, 113 and 178 of October 31, 2002

# EXHIBIT E

MAERSK BILL OF LADING No. 856594628

| (blProductChangedEvent)2008-07-31 13.53.18.386375JMA1832008-07-31 13.53.18.386375JMA183 TAG0130BN9M9US5EUE4QO13 ProductProduct Rescheduled2008-07-31 13.53.18.386375JMA1832008-07-31 13.53.18.386375JMA183Y2008-07-31 13.53.18.386375JMA183KLOL8RJKBUF7O TAG0131ACMN9US5EUE4QO0 The update is: Requested by Customer | | | | |
|---|---|---|---|---|
| The Place of Delivery has change from: | | | | |
| Penang | | | | |
| The Place of Delivery has change to: | | | | |
| Kandla | | | | |
| The Discharge Port has change from: | | | | |
| Singapore | | | | |
| The Discharge Port has change to: | | | | |
| The Product has changed from: | | | | |
| DOZA6TM Caucedo Terminal | MVS | 89N MAERSK NOUMEA | | 815 |
| PAMANTM Manzanillo Terminal | RR | | | |
| PABLBPT Balboa Port Terminal | MVS | 101 MAERSK SENTOSA | | 814 |
| HKHKGMO Hong Kong / Modern Terminals Ltd | MVS | 6QF MAERSK MIAMI | | 824 |
| SGSINPS Singapore/PSA Terminal | FEF | 2KZ CAPE FRANKLIN | | 838 |
| MYPENTM Penang Port Sdn Bhd, NBCT | | | | |
| | | | | |
| The Product has changed to: | | | | |
| DOZA6TM Caucedo Terminal | MVS | 5QF NEDLLOYD ADRIANA | | 824 |
| ESALRTM Algeciras - ML Terminal | MVS | 455 SAFMARINE KOMATI | | 805 |
| AEJALTM Jebel Ali Terminal | FEF | | | |
| INKDLTM Kandla Terminal | 2008-07-31 13.53.18.386375JMA1832008-07-31 13.53.18.386375JMA183 TAG0130775TAVS5EUE4QO13ProductConflict2008-07-31 13.53.18.386375JMA1832008-07-31 13.53.18.386375JMA183Y2008-07-31 13.53.18.386375JMA183KLOL8RJKBUF7O TAG0131OZEUAVS5EUE4QO0Conflict on link: | | | |
| From Caucedo Terminal, Dominican Republic To Algeciras - ML Terminal, Spain | | | | |
| Origin | | Caucedo Terminal, Dominican Republic | | |
| Valid From | 7/5/2002 | | | |
| Valid To | | 12/31/4712 | | |
| Limitation | | Cargo Type not allowed: DRY. | | |
| Size/Type | | | | |
| Conflict on link: | | | | |
| From Jebel Ali Terminal, U. A. E. To Kandla Terminal, India | | | | |
| Origin | | Jebel Ali Terminal, U. A. E. | | |
| Valid From | 6/3/2005 | | | |
| Valid To | | 12/31/4712 | | |

MAERSK BILL OF LADING No. 856594628

| Limitation | | This is a link limitation. |
|---|---|---|
| Size/Type | | |
| Origin | | Jebel Ali Terminal, U. A. E. |
| Valid From | 8/30/2005 | |
| Valid To | | 12/31/4712 |
| Limitation | | This is a geographical limitation for IN. |
| Size/Type | | |

| |
|---|
| 008-07-31 13.53.18.386375 JMA183 2008-07-31 13.53.18.386375 JMA183 TAG0130 IB4LZVS5EUUUJ   O 1 30 Documentation      MSL CAM Message Standard Original processed 2008-07-31 13.53.49.523978 JMA183 2008-07-31 13.53.49.523978 JMA183      Y 2008-07-31 13.53.49.523978 JMA183 KLOL8RJKBUF7O TAG0131 1RQMZVS5EUUUJ   O 0 Document processed (Priority: ) (Template Domain:) |

| Sent To: | |
|---|---|
| Direct recipient for EDI  to EDI_CONT_ANNOUNCEMENT_IF - Successfully dispatched for EDI |
| 2008-07-31 13.53.49.523978JMA1832008-07-31 13.53.49.523978JMA183 TAG0130PA5U8VS5EUU6QO127E-channel Confirmed2008-07-31 13.53.58.646502JMA1832008-07-31 13.53.58.646502JMA183Y2008-07-31 13.53.58.646502JMA183KLOL8RJKBUF7O TAG0131GQFV8VS5EUU6QO0Reference No.: 51JS8VS5EUU6Q |
| Recipient: BRS LOGISTICS, LILLIAM BELTRE, Booked By, Email: BRSLOGISTICS@YAHOO.COM |
| Recipient: BRS LOGISTICS, LILLIAM BELTRE, Booked By, Facsimile: 1-8097280826 |
| 008-07-31 13.53.58.646502JMA1832008-07-31 13.53.58.646502JMA183 TAG013000XEFWS5EUU6QO444PricingShipment priced2008-07-31 13.53.58.646502JMA1832008-07-31 13.53.58.646502JMA183Y2008 07-31 13.53.58.646502JMA183KLOL8RJKBUF7O TAG0131QTCFFWS5EUU6QO0Shipment priced by MARS |