```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NYMET INDUSTRIAL SOLUTIONS, INC.,

                Plaintiff,              MEMORANDUM & ORDER
                                        10-CV-2626 (JS)
        -against-

MAERSK, INC.

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     Patrick J. Corbett, Esq.
                   Rubin, Fiorella & Friedman LLP
                   292 Madison Avenue, 11th Floor
                   New York, NY 10017

For Defendant:     William J. Pallas, III, Esq.
                   Freehill Hogan & Mahar LLP
                   80 Pine Street, 24th Floor
                   New York, NY 10005
```

SEYBERT, District Judge:

Pending before the Court is Defendant's motion to dismiss, or, in the alternative, for judgment on the pleadings. For the following reasons, the Court construes Defendant's motion as a Fed. R. Civ. P. 12(c) motion seeking judgment on the pleadings. Having so construed Defendant's motion, the Court hereby GRANTS it.

## BACKGROUND

Plaintiff NYMET Industrial Solutions, Inc. ("NYMET") filed this admiralty action against defendant Maersk, Inc. ("Maersk") on June 9, 2010 to recover alleged damages to a cargo of steel scrap shipped from Caucedo, Dominican Republic to Kandla, India. NYMET alleges that on March 13, 2009, it learned that

Maersk had not delivered the shipment and that such failure constituted a breach of its contract of carriage with Maersk. NYMET also alleges that Maersk, when it accepted its shipment, became a bailee for the steel scrap, and that Maersk's failure to deliver the materials breached the two parties' contract for bailment.

Maersk, as agent for the carrier A.P. Moller-Maersk A/S, has moved under Fed. R. Civ P. 12(b)(3) or (c) arguing that: (1) it is not a proper party to the Complaint; and (2) seeks to enforce the forum selection clause stated in the bill of lading.

DISCUSSION

I. Standard for Motion to Dismiss

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue is untimely. Defendant filed its answer to Plaintiff's Amended Complaint on October 22, 2010. Defendant's motion was filed on February 9, 2011. By answering first, Defendant waived its right to seek dismissal under Rule 12(b). See Rule 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed").

Rather, as the pleadings are closed, the Court construes Defendant's motion as seeking a judgment on the pleadings under Rule 12(c). When reviewing such a motion, the court applies the same standard it would for a Rule 12(b)(6) motion. New York Marine & Gen. Ins. Co. v. M/V Admiralengracht, 97-CV-7402, 1999 U.S. Dist

LEXIS 6152, at *2 (S.D.N.Y. 1999) (citation omitted). Accordingly, the Court applies the familiar "plausibility standard" set forth in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In undertaking the review, the court may consider the bill of lading, and its forum selection clause, because this document is "referred to, incorporated in, and integral to" Plaintiff's Complaint. <u>Federal Ins. Co. v. M/V Ville D'Aquarius</u>, 08-CV-8997, 2009 WL 3398266, at *4 (S.D.N.Y. Oct. 20, 2009).

II. <u>The Forum Selection Clause is Valid and Enforceable</u>

    A. <u>Forum Selection Clause in Clause 26 Controls</u>

Bills of lading "bind the shipper and all . . . carriers," and "[e]ach term has in effect the force of statute of which all effected must take notice." <u>Calchem Corp. v. Activsea USA LLC</u>, 06-CV-1585, 2007 U.S. Dist LEXIS 53904, at *12 n. 11 (E.D.N.Y 2007) (quoting <u>Southern Pacific Transportation Co. v. Commercials Metals</u>, 456 U.S. 336, 342-43 (1982)).

The bill of lading at issue between NYMET and Maersk contains two forum selection clauses. The relevant language is as follows:

> 6.2(d). If the loss or damage is known to have occurred during Carriage inland in the USA, in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or, in the absence of such a contract or tariff by the provisions of Clause 6.1, and in either case the law of the State of New York will apply.

3

and

> 26. Law and Jurisdiction
>
> Whenever clause 6.2(d)and/or whenever US COGSA applies, whether by virtue of Carriage of the Goods to or from the United States of America or otherwise, that stage of the Carriage is to be governed by United States law and the United States Federal Court of the Southern District of the New York is to have exclusive jurisdiction to hear all disputes in respect thereof. In all other cases, this bill of lading shall be governed by and construed in accordance with English law and all disputes arising hereunder shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the courts of another country.

Multimodal Bill of Lading, Alvarado Decl. dated Feb. 8, 2011, Exs. B & C.

Here, Plaintiff does not claim, much less allege in its Complaint, that the loss or damage occurred "during Carriage inland in the USA" (clause 6.2(d)) or that "US COGSA applies." On the contrary, Plaintiff concedes that the cargo went from the Dominican Republic, through Dubai, before arriving in India. (Pl. Opp. Br. at 8.) Thus, absent any reason to the contrary, the mandatory forum selection clause found in clause 26 would ordinarily apply, requiring suit in the English High of Justice in London, "to the exclusion of the jurisdiction fo the courts of another country."[1]

---

[1] The Court notes, however, that, even if clause 6.2(d)or "US COGSA" did somehow apply, Plaintiff's suit in this Court would still be improper. For, under those circumstances, clause 26 vests the Southern District of New York with "exclusive jurisdiction."

4

See, e.g., The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 8-18 (1972) (forum selection clauses are presumtively valid and should be enforced).

B.  The Forum Selection Clause must be Enforced

Determining whether to enforce a forum selection clause is a four-part inquiry that initially examines whether: (i) the clause was reasonably communicated to the party resisting enforcement; (ii) the clause is mandatory or permissive; and (iii) the claims and parties involved in the suit are subject to the forum selection clause. Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). Once these first three prongs are satisfied, the "fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 383-84.

Here, Plaintiff does not dispute that the first three prongs favor enforcing the forum selection clause. Nor could it. The forum selection clause: (i) appears on the bill of lading's plain face; (ii) requires suit in the English High Court of Justice "to the exclusion of the jurisdiction of the courts of another country"; and (iii) is present in the same contract that Plaintiff alleges the Defendant breached.

Instead, Plaintiff tries to meet its burden under the

5

fourth prong by setting forth three reasons why the forum selection clause is unenforceable: (i) Defendant's voyage amounted to an unreasonable deviation from the planned route, thereby vitiating the bill of lading in its entirety, including its forum selection clause (Pl. Opp. Br. 7.); (ii) the forum selection clause would effectively deprive it of its day in Court (id. at 11-12); and, (iii) there is an interest in "localized controversies" being "decided at home" (id. at 11). The Court addresses each, in turn.

> i. <u>Plaintiff's Unreasonable Deviation Claim does not Render the Forum Selection Clause Unenforceable</u>

First, Plaintiff argues that its unreasonable deviation allegations negate the forum selection clause. But Plaintiff cites no authority to support this position. And the Court could find none. On the contrary, the authority the Court did locate rejects Plaintiff's argument.

Specifically, in <u>Kelso Enterprises, Ltd. v. M/V Wisida Frost</u>, 8 F. Supp. 2d 1197, 1205 (C.D. Cal. 1998), the Central District of California addressed this exact argument. There, the court recognized that "[u]nder both American and English admiralty law, an unreasonable deviation from a bill of lading does deprive the carrier from relying on the terms of the bill of lading." Id. But, the court went on, "whether Defendants did commit such an unreasonable deviation should be determined by the law designated in the bill of lading." Id. Consequently, the court held that it was for the "English forum" designated in the forum selection

6

clause to decide "whether Defendants committed an unreasonable deviation." Id. at 1206.

Kelso Enterprises relied on a Ninth Circuit decision, North River Ins. Co. v. Fed Sea/Fed Pac Line, 647 F.2d 985, 990 (9th Cir. 1981), that also sought to negate a forum selection clause based on an unreasonable deviation argument. The Ninth Circuit rejected that argument noting that, because the bill of lading called for "Canadian law to govern," it was for the "Canadian courts . . . to determine according to that law if a deviation has occurred." Id.

Additionally, the only somewhat relevant Second Circuit district court decision also tips against Plaintiff. For, though on different grounds, in Silgan Plastics Corp. v. M/V Nedlloyd Holland, 96-CV-6188, 1998 WL 193079, at *3 (S.D.N.Y. 1998), the Southern District of New York rejected a plaintiff's argument that its deviation allegations precluded enforcement of a Dutch forum selection clause.

The Court finds these decisions persuasive, particularly Kelso Enterprises and North River. In the bill of lading, Plaintiff agreed to subject "all disputes" to the "English High Court of Justice" to the "exclusion of the jurisdiction of the courts of another country." Thus, it is for the English High Court of Justice to decide whether the Defendant committed an unreasonable deviation and what consequences, if any, should flow

from that deviation.  See Kelso Enterprises, 8 F. Supp. 2d at 1205; North River Ins. Co., 647 F.2d at 990.

More to the point, the Court notes that--aside from this persuasive authority--Plaintiff's position is illogical. If accepted, it would essentially nullify forum selection clauses in any bill of lading case that involves allegations of unreasonable deviation. After all, Plaintiff insists that this Court cannot enforce a forum selection clause until after it first decides this dispute's ultimate issue, a matter that might require substantial discovery and briefing. The effect of such an approach, if implemented, would be to force the Defendant to litigate in, and be subjected to a decision from, a court that all parties agreed would not hear this case.

### ii. The Forum Selection Clause is not Unduly Burdensome to Plaintiff

Second, Plaintiff contends that enforcing the forum selection clause is unreasonable because litigating in England "is so difficult and inconvenient for NYMET that NYMET will for all practical purposes be deprived of its day in Court." (Pl. Opp. Br. at 11-12.) This argument is unavailing. True, under certain circumstances, a court may decline to enforce a forum selection clause on such grounds. See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., __ U.S. __, 130 S. Ct. 2433, 2448, 177 L. Ed. 2d 424 (2010). But Plaintiff has not met the "heavy burden of proof," necessary to negate a forum selection clause on this

8

ground.  Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991).

At most, Plaintiff vaguely contends that, because it is a small company, it would be "time-and-cost prohibitive" for two of its senior executives to "travel to England for depositions, attorney meetings, and trial," such that it "would effectively shut down the business of NYMET while we are in England." (Gardner Decl. ¶ 36.)  This does not come close to meeting Plaintiff's "heavy burden of proof."  Carnival Cruise Lines, Inc., 499 U.S. at 595.  Among other things, Plaintiff does not explain (much less evidence) how, in an age of cell-phones, e-mail, video conferences, and fax machines, its business "would effectively shut down" just because two of its executives temporarily travel abroad.[2]  Thus, "[t]he gap in [Plaintiff's] reasoning is that [its] averments suggest that litigation in England may be more costly or difficult,

---

[2] Additionally, the Court cannot wholly credit Plaintiff's protestations of burden.  Plaintiff publicly holds itself out as a company with "working relationships" in "the Dominican Republic, Puerto Rico, Trinidad, St. Lucia, St. Croix, New Jersey, New York, Texas, Canada, Atlanta Georgia, Detroit and Louisiana," and, through subsidiaries, operates a "marine salvage facility located on the Delta Waterway in Stockton California" and is currently seeking to develop a scrap yard in Texas.  See www.nymetholdings.com (last visited May 5, 2011).  Given the Company's widespread global interests, it seems unlikely that its senior executives never leave their New York offices, or, alternatively, lack the capability to manage complex operations without being on-site.  Furthermore, American courts frequently employ mechanisms that enable distant litigants to participate in meetings and depositions (though, perhaps, not trials) without traveling to the forum.  Plaintiff presents no evidence that English courts do not use similar devices.

but not that it is impossible." Phillips, 494 F.3d at 393. Moreover, Plaintiff does not claim that these perceived hardships "were not foreseeable when [it] agreed to litigate in England." Id.

      iii. Local Concerns do not Justify Nullifying the Forum Selection Clause

Finally, Plaintiff argues that the Court should permit it to breach its contractual obligation to litigate in England because there is a "local interest in having localized controversies decided at home." (Pl. Opp. Br. at 11) (citing Gulf Oil Corp v. Gilbert, 330 U.S. 501, 509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). But this argument is irrelevant, and Plaintiff's reliance on Gulf Oil Corp. is illogical. Gulf Oil addressed a forum non conveniens question. It did not consider a forum selection clause, much less hold that an alleged "local interest" can override a binding contractual agreement to litigate somewhere else. For, in fact, the Supreme Court has consistently held that forum selection clauses must be enforced "unless it imposes a venue so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court." Kawasaki Kisen Kaisha Ltd., 130 S. Ct. at 2448. Finally, this is a commercial dispute between a New York corporation and a New Jersey corporation, concerning a shipment of steel that went from the Dominican Republic to India. So, even if Plaintiff's "local interest" argument had any legal basis (it does not), New York's

supposed "interest" in this case is quite remote.

CONCLUSION[3]

The forum selection clause is valid and enforceable. Consequently, Defendant's Rule 12(c) motion is GRANTED. This case is DISMISSED WITHOUT PREJUDICE to the commencement of an action before the English High Court of Justice in London.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    May  24 , 2011
          Central Islip, New York

---

[3] Defendant also contends that it is not a proper party to this suit. (Def Br. at 3.) The Court does not reach this issue. The English High Court of Justice has sole jurisdiction to hear disputes arising under the bill of lading. Thus, only it can decide whether Defendant has been properly sued. The Court notes, however, that if the Court found that Defendant was not a proper party, it would dismiss on that ground. Thus, either way, this case must be dismissed.